UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

LEAH THODE,

                         Plaintiff,       :          25-CV-4839 (RWL)

           - against -          :

                                 :      **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,  :

               Defendant.    :

------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Leah Thode brings this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of a determination of the Commissioner of Social Security (the "Commissioner") that Thode is not entitled to disability insurance benefits ("DIB") or Supplemental Security Income ("SSI"). In response to Thode's opening brief, the Commissioner moved to remand the case for further administrative proceedings. Thode does not object to remand, but requests that the case be reassigned to a new Administrative Law Judge ("ALJ") and that the ALJ address all issues Thode raised on appeal, not merely those identified by the Commissioner. For the reasons set forth below, the Commissioner's motion is GRANTED, and the matter is REMANDED for further administrative proceedings. On Thode's additional requests for relief, the Court finds that the Commissioner shall (i) instruct the ALJ on remand to review the merits of the additional issues raised by Thode, and (ii) consider reassigning the matter to a new ALJ based on the anomalies identified by the Court.

**BACKGROUND**

The Court incorporates by reference the procedural history provided by Thode in her opening brief and adopted by the Commissioner.  (Pl. Br. at 1-24;[1] *see also* Def. Br. at 1.[2])  The following sets forth some of the more salient facts.

**A.      Procedural Background**

Thode applied for DIB and SSI on August 15, 2019, alleging onset of disability as of June 23, 2018.  (R. 561, 571.[3])  After the denial of both the original claim and request for reconsideration, Thode requested a hearing with an ALJ.  (R. 296-319, 322-26.)  ALJ Gitel Reich heard the matter, and ALJ Joani Sedaca issued a decision granting the requested benefits.  (R. 155-85, 278-87.)  ALJ Sedaca found that Thode had the following severe impairments:  post-traumatic stress disorder, obsessive compulsive disorder, agoraphobia with panic attacks, depressive disorder, anxiety disorder, cervical degenerative disc disease, lumbar degenerative disc disease, sciatica, chronic heart failure, Graves' disease, right wrist degenerative joint disease, bilateral carpal tunnel syndrome, bilateral peripheral neuropathy, diabetes, atrial fibrillation, and obesity.  (R. 281-82.)  ALJ Sedaca further found that Thode "has the residual functional capacity [("RFC")] to perform sedentary work as defined in 20 CFR [§§] 404.1567(b)[,] 416.967(b) with the following limitations:  can occasionally climb, stoop, crouch, kneel, and balance

---

[1] "Pl. Br." refers to Plaintiff's opening brief at Dkt. 13.  Though styled as a memorandum of law in support of a motion for judgment on the pleadings, the Court construes Thode's opening submission as a brief filed pursuant to Rule 6 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g).  (*See* Dkt. 21, at 1 n.1.)

[2] "Def. Br." refers to the Commissioner's brief in opposition at Dkt. 20-1.

[3] "R." refers to the record located at Dkt. 9.

but no crawling; no hazards including unprotected heights, large moving machinery, etc.; no extreme temperature, humidity or fumes, odors, dusts, gases, poor ventilation, etc.; simple, routine and repetitive tasks; occasional decision-making and changes in the work-setting, including procedures and tools; no assembly-line type work; occasional contact with coworkers, including supervisors; no job in which contact with the public is a major part of the job; and would be on task less than 90 percent of the time." (R. 282.)

On August 30, 2022, the Appeals Council vacated and remanded the decision for further proceedings, finding that "[ALJ Sedaca's] decision is not supported by substantial evidence and contains an error of law." (R. 290-93, 384-89.) The Appeals Council found that ALJ Sedaca's RFC assessment failed to "describe the maximum amount of a work activity [Thode] can sustain in an ordinary work setting on a regular and continuing basis" and omitted adequate explanation with citation to specific medical and nonmedical evidence. (R. 291.) The Appeals Council also found that ALJ Sedaca failed to ask the vocational expert ("VE") the correct "hypothetical questions consistent with the [RFC] assessed in the decision." (R. 291-92.) The Appeals Council ordered that, upon remand, the assigned ALJ should reassess Thode's RFC and, accordingly, performable jobs that exist in significant numbers in the national economy. (R. 292.) On remand from the Appeals Council, ALJ Seth I. Grossman heard the case and issued a decision on February 13, 2025, denying benefits. (R. 8-26.)

Over the course of the administrative proceedings, Thode participated in telephonic hearings on January 5, 2022, February 28, 2023, July 11, 2023, April 4, 2024, and December 9, 2024. ALJ Grossman presided over all but the first hearing. The final two hearings are most relevant to the issues before the Court.

3

**B.      ALJ Grossman's Comments And Questions At The Hearings**

On April 4, 2024, ALJ Grossman heard from medical expert ("ME") Coleman Cosgrove on Thode's RFC.  (R. 93-119.)  ALJ Grossman questioned Cosgrove on how different MEs could reach opposite conclusions based on the same evidence, and about the roles objective findings and subjective elements play.  (R. 103-06, 115-17.)  As part of this exchange, ALJ Grossman provided his "personal impression" on Thode's conditions, based on some treating notes, before "get[ting] into [Cosgrove's] opinion."  (R. 104, 106.)   Later, after hearing Cosgrove's summary of the medical evidence, ALJ Grossman questioned Cosgrove whether "in [Cosgrove's] opinion, … [Thode is] capable of simple task job with at most occasional contact with supervisors, coworkers, and the public, and no fast-paced quotas."  (R. 109.)  Cosgrove responded, "that would be exactly what I would opine."  (*Id.*)

In the same hearing, ALJ Grossman also heard from VE Dothel Edwards on jobs that exist in significant numbers in the national economy that Thode can perform.  (R. 119-26.)   Thode's representative (the "Representative") questioned Edwards on probationary periods, the period in which a new employee is trained by their supervisor. (R. 123-26.)   Subsequently, ALJ Grossman questioned Edwards on the length of probationary periods for unskilled jobs and whether probationary periods require more interaction with a supervisor than is regularly required for a job.  (R. 124-26.)

At the December 9, 2024 hearing, a different VE, Helene J. Feldman, testified about jobs that exist in significant numbers in the national economy that Thode can perform.  (R. 64-92.)  But ALJ Grossman first asked Feldman if she had seen the Social

4

Security Ruling ("SSR") published on December 6, 2024.[4]  (R. 67-69.)  ALJ Grossman did not provide much detail about the ruling except to say that Feldman should read it "because it is interesting," and that he (ALJ Grossman) understood it as "some kind of a hint that [VEs] can use [SkillTRAN, Job Browser Pro] without saying anything about it," because the SSR "say[s] that [VEs] can use things which are generally accepted by the profession."  (R. 68-69.)  ALJ Grossman stated that he learned about the SSR's existence from a VE unrelated to Thode's case.  (R. 69.)

In discussing the available jobs, ALJ Grossman asked VE Feldman whether she had "surveillance system monitor" as an available job for Thode, which Feldman confirmed that she did.  (R. 73.)  When the Representative was questioning Feldman about surveillance system monitor, however, ALJ Grossman occasionally interrupted the examination and answered the questions himself, only asking Feldman for confirmation. (R. 82-85.)

Later, when the Representative tried to ask Feldman about probationary periods, ALJ Grossman told the Representative that "[ALJs] have been advised that the [Social Security Administration ("SSA")] does not care … about probational periods being different."  (R. 86-87.)

---

[4] The transcript does not specify which SSR ALJ Grossman referred to.  Based on the context and indicated date of publication, ALJ Grossman most likely was referring to SSR 24-3p.  (R. 67 (describing an SSR published on December 6, 2024; *see also* Pl. Br. at 18 (describing the SSR discussed by ALJ Grossman as SSR 24-3p)).)  SSR 24-3p "explains [the] standard for evaluating whether vocational evidence is sufficient to support a determination" and, specifically, rescinds ALJs' previous duty to "identify and resolve conflicts between occupational information provided by … VEs and information in the [Dictionary of Occupational Titles]."  Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions, 89 Fed. Reg. 97158 (Dec. 6, 2024) (footnote omitted).

When the Representative asked Feldman about the source of the job numbers to which Feldman was testifying, ALJ Grossman again interjected, stating that "SkillTRAN, Job Browser Pro" was used and that it "do[es] some surveillance and … some algorithms, but nobody … know[s] exactly what it is that they do."  (R. 87-88.)  ALJ Grossman only allowed Feldman to confirm his (ALJ Grossman's) answer without commenting more, despite the Representative's request that Feldman answer herself.  (R. 87-88.)  ALJ Grossman further commented that if the Representative had any objection to Feldman's use of SkillTRAN, Job Browser Pro software, "[ALJ Grossman was] not going to say anything is wrong with it … [,] any objection … is preserved.  All the [VEs] use [the software].  This is way above [ALJ Grossman's] pay grade level."  (R. 88.)

## C.    ALJ Grossman's Decision

In his February 13, 2025 decision, ALJ Grossman denied Thode's application, after applying the standard five-step sequential analysis.  (R. 12.)  First, ALJ Grossman found that Thode had not engaged in substantial gainful activity since June 23, 2018.  (R. 14.) At step two, ALJ Grossman found that Thode had the following severe impairments: coronary artery disease, diabetes, depression, anxiety, PTSD, bipolar disorder, and agoraphobia.  (R. 14.)  At step three, however, ALJ Grossman found that Thode did not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.  (R. 14-15.)  Before proceeding to the fourth step, ALJ Grossman found that Thode had the RFC "to perform light work as defined in 20 C.F.R. [§§] 404.1567(b)[,] 416.967(b) except she can frequently perform handling and reaching," and "can perform simple tasks, with occasional interaction with supervisors, coworkers and the public and no fast-paced production quotas."  (R. 16-24.)

The RFC evaluation included ALJ Grossman's description of how persuasive he found each ME to be.  (R. 23-24.)

Based on his evaluation of Thode's RFC, ALJ Grossman found at step four and five that Thode "has no past relevant work" but that "there are jobs that exist in significant numbers … that [Thode] can perform," such as marker and routing clerk.  (R. 24-25.)  Accordingly, ALJ Grossman concluded that Thode was not disabled from June 23, 2018, through the date of the decision.  (R. 25.)

The parties agree that ALJ Grossman's decision is flawed such that the case should be remanded.  In particular, the parties agree that ALJ Grossman did not sufficiently assess potential absenteeism limitations related to Thode's agoraphobia.  (Def. Br. at 2-3; Pl. Br. at 27.)  The parties thus agree that, on remand, the assigned ALJ shall be ordered to "reevaluate any potential limitations related to absenteeism," "further evaluate the opinions of Drs. John Miller, John Nikkah, Coleman Cosgrove[,] and Stephen Rubin," and "offer [Thode] the opportunity for a hearing" (collectively, the "Agreed-Upon Issues").  (Def. Br. at 3; *see also* Pl. Reply at 1.[5])

In addition to the Agreed-Upon Issues, Thode requests that the ALJ (i) apply all parts of the Paragraph C criteria of 20 C.F.R. Pt.40, Subpt. P, App. 1, 12.00.G.2 (ii) "specifically address and analyze the exertional limitations (ability to lift, carry, stand, and walk)"; (iii) "consider the longitudinal treatment record"; (iv) "apply the 20 C.F.R. § 404.1594 medical improvement standard" upon a discovery of a different RFC for different periods; and (v) "specifically address and analyze the reliability of any vocational witness

---

[5] "Pl. Reply" refers to Plaintiff's reply brief at Dkt. 21.

testimony, including what professional experience is relied upon, the reliability of the methodology of job number estimates in the national economy, and how absenteeism affects ability to complete a probationary period" (collectively, the "Additional Issues"). (Pl. Reply at 1-2; *see also* Pl. Br. at 25-31, 34-35.)

## DISCUSSION

Though the parties agree that the case should be remanded and on the reconsideration of the Agreed-Upon Issues (*see* Def. Br. at 2-3; Pl. Reply at 1), Thode further requests the Court order the Commissioner to (i) assign the matter to a different ALJ than ALJ Grossman on remand, and (ii) direct the assigned ALJ to analyze the Additional Issues. (Pl. Reply at 1.) The Court considers the requests in turn and rules as follows.

## A.    Reassignment To A Different ALJ

Thode seeks an order reassigning her matter to a new ALJ. Thode argues that ALJ Grossman's conduct in the administrative proceedings gives "rise to serious concerns about the fundamental fairness of the disability review process." (Pl. Br. at 31 (quoting *Sutherland v. Barnhart*, 322 F. Supp.2d 282, 292 (E.D.N.Y. 2004).) Specifically, Thode alleges that ALJ Grossman (i) posed "unduly leading questions" to ME Cosgrove; (ii) demonstrated an unwillingness to meaningfully analyze any objections on probationary periods and job number estimates; and (iii) assumed the job of a VE by *sua sponte* soliciting testimony from VE Feldman on whether Thode could perform work as a surveillance system monitor.[6] (Pl. Br. at 31-34; Pl. Reply at 4-5.) Thode further asserts

---

[6] Thode suggests a fourth basis, without citation to the record, for her fairness concern: that "the ALJ referenced an extrajudicial source … in contravention of the ALJ's obligation to decide Ms. Thode's claim only on record evidence and sworn testimony …." (Pl. Br. at

that a fresh look by another ALJ would be beneficial, particularly given the number of hearings ALJ Grossman held over a twenty-month period. (Pl. Reply at 4.)

Generally, "courts have held that whether a case is remanded to a different ALJ is a decision for the Commissioner to make." *Hartnett v. Apfel*, 21 F. Supp.2d 217, 222 (E.D.N.Y. 1998) (citing *Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993)); *see also Rodriguez v. Colvin*, No. 15-CV-2570, 2017 WL 1194705, at *17 (S.D.N.Y. Mar. 31, 2017); *Mack v. Commissioner of Social Security*, No. 20-CV-2722, 2021 WL 3684081, at *20 (S.D.N.Y. July 26, 2021), *R. & R. adopted*, No. 20-CV-2722, 2021 WL 3683628 (S.D.N.Y. Aug. 17, 2021). Nonetheless, courts recognize that "remand to a new ALJ will be necessary in those situations which compromise [the disability review process's] integrity. Specifically, when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate." *Sutherland*, 322 F. Supp.2d at 292.

The applicable regulations contemplate one such scenario: prohibiting an ALJ "prejudiced or partial with respect to any party" from conducting a hearing. 20 C.F.R. § 404.940. But even absent a finding of prejudice, courts have sometimes ordered reassignment on remand when "a fresh look by another ALJ ... would be beneficial." *McClaney v. Astrue*, No. 10-CV-5421, 2012 WL 3777413, at *20 (E.D.N.Y. Aug. 10, 2012)

---

32.) The Court agrees with the Commissioner that Thode likely is referring to ALJ Grossman's comments regarding the new SSR, which he learned about from a VE not involved in Thode's case. (R. 69; *see also* Def. Br. at 5.) Neither the fact that ALJ Grossman learned about the SSR from a non-party source, nor the fact that he introduced his interpretation of it, reflect any potential unfairness; an ALJ is obligated to apply and follow the Administration's regulations and rules. ALJ Grossman only indicated that he consulted the SSR, a legitimate source of law, not the opinion of a third-party VE. (R. 69 ("I looked for it and I got [the SSR] … by [searching the internet] ….").)

9

(quoting *Collado v. Astrue*, No. 05-CV-3337, 2009 WL 2778664, at *16 (S.D.N.Y. Aug. 31, 2009)); *see also Yira R. v. Commissioner of Social Security*, No. 25-CV-1313, 2025 WL 2908804, at *8 (S.D.N.Y. Oct. 13, 2025).

The Court first considers whether the integrity of the disability review process will be compromised absent reassignment.  Second, the Court addresses whether the benefits of a fresh look warrant reassignment.

### 1.    Integrity Of The Process And Prejudice

The Court first addresses whether the integrity of the disability review process will be compromised absent reassignment.  In addressing this question, courts in the Second Circuit generally look to the four factors set forth in *Sutherland*, which center on whether the ALJ exhibited prejudice:

> (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party.[7]

322 F. Supp.2d at 292; *see, e.g.*, *De Mota v. Berryhill*, No. 15-CV-6855, 2017 WL 1134771, at *10-12 (S.D.N.Y. Mar. 24, 2017) (applying *Sutherland* factors and finding reassignment appropriate); *Pichardo v. Commissioner of Social Security*, 714 F. Supp.3d 183, 199-200 (E.D.N.Y. 2024) (applying *Sutherland* factors and finding reassignment unnecessary); *Valentin v. Colvin*, No. 3:16-CV-245, 2017 WL 923903, at *3-5 (D. Conn.

---

[7] Although no court appears to have addressed the issue, the four *Sutherland* factors need not all be present for the Court to find prejudice warranting reassignment.  Indeed, even the *Sutherland* court did not conduct a factor-by-factor analysis to determine whether the ALJ had demonstrated prejudice.  *See Sutherland*, 322 F. Supp.2d at 292-93.

Mar. 8, 2017) (same); *Card v. Astrue,* 752 F. Supp.2d 190, 191-93 (D. Conn. 2010) (same).

In applying the factors, courts "must start ... from the presumption that [ALJs] are unbiased." *Servillo v. Berryhill*, No. 18-CV-7118, 2019 WL 4594225, at *21 (S.D.N.Y. Sept. 23, 2019) (internal quotation marks and citation omitted); *see also Schweiker v. McClure*, 456 U.S. 188, 195, 102 S. Ct. 1665 (1982). The burden of rebutting this presumption rests on the claimant. *Servillo*, 2019 WL 4594225, at *21; *see also Schweiker*, 456 U.S. at 195-96 (imposing burden on claimant in Medicare claim context).

Applying the *Sutherland* factors, the Court is not persuaded that ALJ Grossman's conduct gives rise to serious concerns about the fundamental fairness of the review process. With respect to the first *Sutherland* factor, there is no clear indication that ALJ Grossman will not apply the appropriate legal standard on remand. Thode argues that ALJ Grossman will likely not "apply the law on probationary periods and job number estimates," based on ALJ Grossman's statements during VE Feldman's testimony. (Pl. Reply at 5 (citing R. 88).) ALJ Grossman's statements, however, suggest otherwise and indicate his interest in following the Administration's rules and regulations. (*See*, *e.g.*, R. 88 (declining the Representative's objection to SkillTRAN, Job Browser Pro because "the Appeals Council is not going to say anything is wrong with it"), 86-87 ("[The ALJs] have been advised that *the SSA* does not care … about probational periods being different." (emphasis added)), 68-69 (expressing his belief that the use of SkillTRAN, Job Browser Pro is acceptable because *the SSR* says that VEs "can use things which are generally accepted by the profession").) The record is not so result-oriented as to demonstrate that ALJ Grossman will not apply appropriate legal standards upon remand.

The second, third, and fourth *Sutherland* factors are also not met as the Court finds no apparent hostility or clear manifestation of bias.  *See Card*, 752 F. Supp.2d at 192-93 (finding that the second, third, and fourth *Sutherland* factors were not established because plaintiff failed to show plaintiff failed to "provide evidence of clearly manifested bias or inappropriate hostility"); *Valentin*, 2017 WL 923903, at *4 (similar).  Although ALJ Grossman occasionally interrupted the Representative's cross-examination of experts, he did not "effectively prevent[] plaintiff from challenging the basis for [the ALJ's] conclusion that plaintiff was not disabled."  *Pabon v. Commissioner of Social Security*, No. 14-CV-1954, 2015 WL 4620047, at *5 (S.D.N.Y. Aug. 3, 2015) (quoting *D'Amore v. Commissioner of Social Security*, No. 11-CV-0350, 2011 WL 6934712, at *7 (E.D.N.Y. Dec. 30, 2011)) (finding that an ALJ's conduct was biased and unfair because the ALJ's disruptions effectively prevented the plaintiff from challenging the ALJ's conclusion), *R. & R. adopted sub nom*. *Pabon v. Colvin*, No. 14-CV-1954, 2015 WL 5319265 (S.D.N.Y. Sept. 11, 2015).  Moreover, the interruptions were at times helpful to Thode, suggesting that they did not stem from hostility or bias.  (*See*, *e.g.*, R. 54-55 (ALJ Grossman interrupting to clarify to the testifying VE that "[the Representative] is asking … a separate question"), 57 (ALJ Grossman interrupting to clarify that preceding testimonies were sufficient to find Thode "not employable"), 124-25 (ALJ Grossman following up on the Representative's questions about probationary periods with questions favorable to Thode).)

ALJ Grossman's leading questions also do not support a finding of prejudice.  "[A]n ALJ is not prohibited from asking leading questions at a hearing, as long as the questions do not 'demonstrate bias or a prejudicial tone.'"  *Shafer v. Saul*, No. 20-CV-3060, 2022

WL 827075, at *15 (S.D.N.Y. Jan. 20, 2022) (quoting *Torres v. Commissioner of Social Security*, 559 F. Supp.3d 175, 193 (S.D.N.Y. 2021)), *R. & R. adopted*, No. 20-CV-3060, 2022 WL 826411 (S.D.N.Y. Mar. 18, 2022).   The Court cannot conclude that ALJ Grossman's questions, alone or in totality, are demonstrative of bias or hostility towards Thode.   For instance, ALJ Grossman asked whether "in [ME Cosgrove's] opinion, … [Thode] is capable of simple task job with at most occasional contact with supervisors, coworkers, and the public, and no fast-paced quotas." (R. 109.)   Although this is a leading question, it does not demonstrate bias or hostility given the certainty in Cosgrove's response that ALJ Grossman's statement "would be ***exactly*** what [Cosgrove] would opine," and the consistency in Cosgrove's position throughout his testimony.   (*See* R. 109-19 (emphasis added).)   Similarly, while ALJ Grossman *sua sponte* questioned the VE about the surveillance system monitor position, factually neutral questions to an expert in relation to their field of expertise do not evince prejudice.   Indeed, ALJs have an obligation to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."   *Ginsberg v. Astrue*, No. 05-CV-3696, 2008 WL 3876067, at *16 (E.D.N.Y. Aug. 18, 2008) (quoting *Robinson v. Secretary of Health and Human Services*, 733 F.2d 255, 258 (2d Cir. 1984)).

In short, Thode has not shown that ALJ Grossman's conduct exhibited prejudice or otherwise compromised the integrity of the administrative review process.

### 2.   Beneficial Fresh Look

Thode alternatively argues that the case should be reassigned to a different ALJ because "a fresh look [by a new ALJ] would be beneficial."  (Pl. Reply at 4.)

Courts in this Circuit generally have ordered reassignment based on the benefits of a fresh look in two circumstances:   after an ALJ has either issued two unfavorable

13

decisions, or if the ALJ failed to properly follow the directives of the Appeals Council. *See*, *e.g.*, *Yira R.*, 2025 WL 2908804, at *8 (finding that a fresh look would be beneficial "given that th[e] particular ALJ has already undertaken two unsuccessful attempts to conduct a proper analysis"); *Bruzdoski v. Commissioner of Social Security*, No. 21-CV-6271, 2023 WL 4745957, at *8 (E.D.N.Y. July 25, 2023) (ordering reassignment absent a finding of bias, relying on precedent that found a fresh look beneficial "rather than have the same ALJ review the claims a third time") (internal quotation marks omitted); *Collado*, 2009 WL 2778664, at *16 (reassigning the matter to a different ALJ in part because of the "limited review conducted by the ALJ after the Appeals Council first remanded"); *Bobbie W. v. Dudek*, No. 3:23-CV-606, 2025 WL 755639, at *8 (N.D.N.Y. Mar. 10, 2025) (similar); *Thomas T. on behalf of E.G.T. v. Commissioner of Social Security*, No. 5:21-CV-1225, 2023 WL 2049526, at *6 (N.D.N.Y. Jan. 31, 2023) (finding a fresh look beneficial based on "the egregiousness of the failure to provide thoughtful consideration of the evidence despite the Appeals Council's order"), *R. & R. adopted sub nom*. *Thomas T. on behalf of E.G.T. v. Kijakazi*, No. 5:21-CV-1225, 2023 WL 2048560 (N.D.N.Y. Feb. 16, 2023); *Vicari v. Astrue*, No. 05-CV-4967, 2009 WL 331242, at *6 (E.D.N.Y. Feb. 10, 2009) (reassigning the case after the prior ALJ's decision, "which was authored with the benefit of multiple remand orders from the Appeals Council, [still] contained fundamental errors of law").

Here, ALJ Grossman denied Thode's application only once, and Thode does not assert that ALJ Grossman failed to follow the Appeals Council's orders. A fresh look may be beneficial, nonetheless. In that respect, the Court looks to the factors considered in *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977). *Robin* was a criminal case, not a social security disability case. *Id.* at 8-9. A minority of courts nonetheless have applied

*Robin* instead of *Sutherland* in determining whether reassignment in a social security case is necessary.  *See*, *e.g.*, *Agapito v. Colvin*, No. 12-CV-2108, 2014 WL 774689, at *23 n.19 (S.D.N.Y. Feb. 20, 2014) (citing *Robin* and declining to order reassignment to a different ALJ); *Maggipinto v. Astrue*, 541 F. Supp.2d 477, 479 (D. Conn. 2007) (applying *Robin* factors in considering reassignment) (citing *Hughes v. Chater*, 104 F.3d 353 (2d Cir. 1996) (unpublished)).  The *Robin* factors include:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Robin*, 553 F.2d at 10.

To be clear, the Court does not believe application of the *Robin* factors is mandatory or a substitute for the *Sutherland* factors when considering reassignment to a different ALJ based on concerns for integrity of the process and prejudice.  Rather, the Court finds the *Robin* factors useful in considering whether a "fresh look" by another ALJ may be beneficial in the absence of either demonstrative prejudice or a clear indication that the ALJ will not apply the proper legal standard on remand.

Applying the *Robin* factors here, the Court finds that a fresh look may well be beneficial.  ALJ Grossman's leading questions, interruptions, statements about what the Administration does or does not "care" about, offering opinions before soliciting them from the experts, and seemingly pre-determined view about the reliability of SkillTRAN, Job Browser Pro all raise the specter that ALJ Grossman may have difficulty setting aside

15

previously expressed views or findings when revisiting the matter on remand. *See Robin*, 553 F.2d. at 10 (when "remand involve[s] essentially the same problems and require application of the same criteria," there exists a potential hardship in putting out of mind previously formed impressions).

Reassignment thus would preserve the appearance of justice by eliminating any concern about the ALJ having preconceived views. *See McClaney*, 2012 WL 3777413, at *20 ("Because the remand will require a new determination of 'essentially the same problems and require application of the same criteria,' … I conclude that reassignment … would promote, at a minimum, the appearance of justice") (quoting *Robin*, 553 F.2d at 10); *Dioguardi v. Commissioner of Social Security*, 445 F. Supp.2d 288, 300 (W.D.N.Y. 2006) (finding that the possibility of an ALJ "hav[ing] formed opinions … that could possibly prevent an objective review of the evidence and a fair rehearing" supported reassignment of a social security matter to a new ALJ).

Moreover, reassignment is not expected to result in excessive waste or administrative burden. As discussed below, the Court is ordering that both the Agreed-Upon and Additional Issues be considered by the ALJ on remand. The ALJ's review will require revisiting steps two through five of the sequential analysis, not merely a targeted, discrete issue. At the very least, the appearance of justice that will be gained by a "fresh look" outweighs the cost and burden, if any, associated with reassigning the case to a different ALJ.

The Court thus finds that reassignment to a different ALJ for a "fresh look" may be beneficial, even if not legally mandated at this juncture. As the decision for assignment of an ALJ generally lies with the Commissioner, the Court leaves the ultimate decision to

16

the Commissioner's discretion.  The Court, however, strongly urges the Commissioner to consider reassigning the case to a different ALJ on remand, in light of the foregoing analysis.  *See Christine S. v. Commissioner of Social Security*, No. 5:19-CV-474, 2020 WL 3642244, at *9 (N.D.N.Y. July 6, 2020) ("[T]his Court encourages the Commissioner to consider in his discretion whether the case warrants a fresh look by a new ALJ.") (internal quotation marks and brackets omitted); *see also Nunez v. Barnhart*, No. 01-CV-5714, 2002 WL 31010291, at *4 (E.D.N.Y. Sept. 9, 2002) (leaving the decision of reassignment "to the sound discretion of the Commissioner").

## B.	Instructions Upon Remand

On remand, the parties agree that a reevaluation of Thode's RFC is necessary, and that the ALJ should address all Agreed-Upon Issues.  Thode additionally requests that the Court direct the ALJ to address the Additional Issues raised by Thode.  As the case is being remanded, and as the Commissioner's brief does not address the merits of the Additional Issues, the Commissioner shall instruct the ALJ on remand to review the merits of both the Agreed-Upon and Additional Issues.

### CONCLUSION

For the foregoing reasons, the Commissioner's motion for remand is GRANTED and the matter is REMANDED to the Commissioner.  The Commissioner is strongly urged to consider reassigning the matter to a new ALJ.

On remand, the Commissioner shall direct the assigned ALJ to:

1.	Provide Thode an opportunity for another hearing;

2.	Address and analyze limitations related to absenteeism, whether due to agoraphobia or other impairments;

3.	Evaluate anew all medical opinions for the adjudicative period, including but not limited to the opinions of Drs. Miller, Nikkah, Cosgrove, and Rubin; and

17

4.    Consider the Additional Issues raised by Thode, namely,

   a.  Application of all parts of the Paragraph C criteria of 20 C.F.R. Pt. 40, Subpt. P, App. 1, 12.00.G.2;

   b.  Analysis of exertional limitations with regard to Thode's ability to lift, carry, stand, and walk;

   c.  Accounting for the longitudinal treatment record;

   d.  Application of the 20 C.F.R. § 404.1594 medical improvement standard in the event there are different RFCs for different periods; and

   e.  Analysis of the reliability of all vocational witness testimony, including the methodology used and sources relied upon; and solicitation and consideration of the VE's opinion as to how absenteeism affects ability to complete a probationary period.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: April 3, 2026
       New York, New York

Copies transmitted this date to all counsel of record.

18